IN THE MATTER OF THE COMPLAINT

OF

CHRISTOPHER RE AS OWNER OF M/Y CHRIS-SEA, A 1995 SEA RAY SUNDANCER. VESSEL FOR EXONERATION FROM OR LIMITATION OF LIABILITY,

Petitioner.

Memorandum and Order
August 27, 2008

JOSEPH F. BIANCO, District Judge:

Petitioner Christoper Re ("Re" or "petitioner") brings this petition for exoneration from or limitation of liability, pursuant to the Limitation of Liability Act, 46 U.S.C.A. § 30501 *et seq.*, against claimants/respondents Joseph Giordano ("Giordano" or "claimant") and DiMillo's Yacht Sales and Services, LLC ("DiMillo"), for all claims, damages and/or losses alleged by Giordano arising out of an incident which is alleged to have occurred on August 2, 2006, at dock near Freeport, New York. Specifically, Giordano claims that, while being shown petitioner's boat by a DiMillo employee in connection with Giordano's potential purchase of the boat, Giordano tripped on spring lines tied across the swim platform as he tried to board the boat, thereby causing injury to him. Giordano asserts that his injury was caused by this negligent condition of which petitioner, although not present at the time of the incident, was aware. Petitioner now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the limitation of liability claim. For the reasons that follow, petitioner's motion is denied.

I. BACKGROUND

A. The Facts

The following facts are taken from the parties' depositions, declarations, exhibits and the respective Local 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York,* 422 F.3d 47, 50 (2d Cir. 2005.) Thus, the Court shall

construe the facts in favor of Giordano, the non-moving party.[1]

Re is the former owner of a 1995, 37-foot Searay, Sun Dancer boat, named the "Chris-Sea." (Re Dep. 4:23-5:10.) Petitioner gave his vessel to DiMillo for purposes of marketing and selling the boat. (*Id.* 16:14-19.) Bill Cheremi, a mutual friend of Giordano and Re, recommended that Giordano look at Re's boat. (Giordano Dep 46:2-4.)

On August 2, 2006, David Tischer, an employee of DiMillo, accompanied Giordano to view the boat. (Pet.'s 56.1 ¶ 1.) The boat had been tied stern-to in the boat slip by DiMillo's personnel. (*Id.* ¶ 7.) Two "spring lines" were tied from port and starboard cleats in the stern of the vessel, across the stern swim platform in a cross-pattern, onto cleats on the DiMillo dock. (*Id.* ¶ 10.) The spring lines were tied so that they rested approximately 1 to 2 inches above the swim platform. (Respondent Giordano's Response to Petitioner's 56.1 ¶ H.) Before attempting to board the vessel, Giordano observed and was aware of the spring lines tied across the stern swim platform. (Pet.'s 56.1 ¶ 11.) In attempting to board the vessel, Giordano stepped onto the stern swim platform with one foot, directly behind the transom door on the port side. (*Id.* ¶ 12.) The next thing Giordano remembered was falling into the water. (*Id.* ¶ 13.) After he fell into the water, Giordano found his leg entangled in a spring line. (*Id.* ¶ 16.)

Giordano did not know what specifically caused him to trip while boarding Re's vessel.

---

[1] Unless otherwise noted, the facts contained below are either undisputed or the opposing party has offered no evidence to controvert such fact.

(*Id.* ¶ 14.) Giordano believes that he tripped on one of the spring lines and that the spring line entangled his leg. (*Id.* ¶¶ 15, 17.) Giordano does not know whether his foot became entangled in the spring line before he fell into the water. (*Id.* ¶ 18.) Tischer observed the spring lines crossing the swim platform upon boarding the vessel. (Giordano's Response to Petitioner's 56.1 ¶ G.) However, Tischer did not observe Giordano's fall into the water. (*Id.* ¶ F.)

Giordano suffers from a history of tophaceous gout diffusely over his body. (Petitioner's 56.1 ¶ 2.) Giordano also suffered from osteoarthritis in his left knee. (*Id.* ¶ 3.) Petitioner contends that the gout condition has a restrictive effect on Giordano's range of motion. (Report of John C. Killian, M.D., Aug. 6, 2007; Report of Gregory Lieberman, Aug. 3, 2006.)

B. Procedural History

On October 26, 2006, Giordano commenced a lawsuit in the Supreme Court of the State of New York, County of Nassau. On January 17, 2007, petitioner filed a verified complaint for exoneration from, or limitation for liability, in the United States District Court for the Eastern District of New York. On March 7, 2007, Giordano filed an answer to the complaint. On March 16, 2007, DiMillo filed a claim for contribution and indemnification against Re, and an answer to the complaint. On February 29, 2008, petitioner moved for summary judgment. On April 8, 2008, Giordano filed a motion in opposition. On April 25, 2008, petitioner filed his reply brief.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

## III. DISCUSSION

### A. Jurisdiction

Petitioner brought this action pursuant to 28 U.S.C. § 1333 ("§ 1333") and 46 U.S.C.A. § 30501 *et seq.* (the "Limitation Act"). Pursuant to the Limitation Act, an owner of a vessel may seek to limit its liability by filing a complaint in federal district court. *See* 46 App. U.S.C.A. § 183, revised at 46 U.S.C. § 30505 *et seq.* and Fed. R. Civ. P. Supplemental Admiralty Rule F.[2] In

---

[2] The Court notes that 46 U.S.C. § 181 *et seq.*, was repealed effective October 6, 2006, and the Limitation Act is currently codified at 46 U.S.C. § 30501, *et seq.* Because Section 183(a) was the controlling statute at the time of incident that is the subject of this lawsuit in August 2006, Section 183(a) is the applicable provision for purposes of this action. *See* Pub. L 109-304, § 19 (repealing the prior provisions 183 and noting that they "are repealed, except with respect to rights and duties

3

particular, the Limitation Act allows a vessel owner "to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438 (2001) (citing 46 U.S.C. § 183(a), now codified at 46 U.S.C. § 30505). Although the Limitation Act is generally invoked by vessel owners who are engaged in maritime commerce, the Limitation Act also may be invoked by pleasure craft owners. *See In re Cornfield,* 365 F. Supp. 2d 271, 276 (E.D.N.Y. 2004) (citing *In re Guglielmo,* 897 F.2d 58, 59-60 (2d Cir. 1990)), *aff'd*, 156 Fed. Appx. 343 (2d Cir. 2005).

B. The Negligence Claim

In order to establish a limitation of liability in a maritime negligence action, the court must employ a two-step analysis: "'First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness.'" *In re Complaint of Hercules Carriers, Inc.,* 768 F.2d 1558, 1563-64 (11th Cir. 1985) (quoting *Farrell Lines, Inc. v. Jones,* 530 F.2d 7, 10 (5th Cir. 1976)); *accord In re Guglielmo*, 897 F.2d at 61; *In re Sea Wolf Marine Towing and Transp.,* No. 03 cv 5578 (KMW) (THK), 2007 WL 3340931, at *2 (S.D.N.Y. Nov. 6, 2007); *In re Vulcan Materials Co.,* 369 F. Supp. 2d 737, 741 (E.D. Va. 2005); *Lockheed Martin Corp.,* 2007 WL 965451, at *4; *In re Livolsi*, No. 3:03-CV-1763, 2005 WL 3675967, at *4 (D. Conn. Mar. 22, 2005). Under this standard, a "[c]laimant must demonstrate by a preponderance of the evidence that Petitioner was negligent." *In re Cornfield*, 365 F. Supp. 2d. at 276. Moreover, "[i]f a claimant establishes that negligence caused the injury, then the burden shifts to the petitioner to establish that there was no neglect, privity, or knowledge on his part." *Id.*; *accord In re Livolsi*, 2005 WL 3675967, at *4.

The elements to establish a claim of negligence under maritime law are the same as the elements of negligence under common law. *See Petition of Kinsman Transit Co.,* 338 F.2d 708, 721 (2d Cir. 1964); *In re Livolsi,* 2005 WL 3675967, at *4; *In re Cornfield,* 365 F. Supp. 2d at 276. These elements include duty, breach of that duty, and causation. *See Petition of Kinsman Transit Co.,* 338 F.2d at 721; *accord Chylinski v. Wal-Mart Stores, Inc.,* 150 F.3d 214, 218 (2d Cir. 1998). In particular, "[u]nder maritime law, a vessel owner owes passengers a duty to exercise reasonable care under the circumstances. This duty of care, however, does not render the vessel owner the insurer of his guest's safety." *In re Cornfield,* 365 F. Supp. 2d at 276 (internal citations omitted).

Petitioner argues that summary judgment is warranted because (1) the undisputed facts demonstrate that the spring lines did not cause Giordano to trip as he boarded the boat and fall into the water; and (2) even assuming *arguendo* that Giordano could prove proximate causation, he cannot prove that it was negligent to tie the spring lines across the swim platform. As set forth below, the Court concludes that there are disputed issues of material fact on each of these issues that precludes summary judgment.

---

that matured, penalties that were incurred, or proceedings that were begun before the date of the enactment of this Act. . . ."); *see, e.g., Lockheed Martin Corp. v. Unknown Respondents,* No. 5:02-CV-734 (NPM/GJD), 2007 WL 965451, at *1 n.2 (N.D.N.Y. Mar. 29, 2007). In any event, the applicable standard (described *supra*) for the issues raised in this petition has not materially changed as a result of the re-codification of Section 183 as Section 30505.

4

1. Causation

Petitioner contends that Giordano is unable to establish that it was petitioner's or DiMillo's negligence which caused the injuries. Specifically, petitioner contends that Giordano has failed "to provide circumstantial evidence sufficient for a trier of fact to reasonably infer that it was Mr. Re's alleged negligence, in allowing or ratifying the spring lines to be tied across the swim platform, rather than Claimant[']s negligence or some other factor, which caused the fall and injury, or that it was even a negligent act to tie the vessel in the manner it was tied." (Pet.'s Br. at 6.) Petitioner further suggests that the fall was the result of a pre-existing gout condition which affected Giordano's range of motion. (*Id.* at 9-10.) As discussed below, the Court disagrees and concludes that these issues cannot be resolved on summary judgment.

"Proximate cause . . . limits a defendant's liability to those foreseeable consequences that the defendant's negligence was a substantial factor in producing." *Bonsignore v. City of New York*, 683 F.2d 635, 637 (2d Cir. 1982). "Proximate cause is a classic jury question." *Southard v. Eight Ball, Inc.,* No. 96 Civ. 5542, 1997 U.S. Dist. Lexis 9907, at *14 (S.D.N.Y. July 11, 1997.) However, a plaintiff is not required to eliminate all other possible causes of an injury, and the fact "[t]hat another possible cause concurs with a defendant's negligent act or omission to produce an injury does not relieve a defendant from liability." *Mortensen v. Mem'l Hosp.,* 483 N.Y.S. 2d 264, 270 (N.Y. App. Div. 1984); *see also Ascher v. Target Corp.*, 522 F. Supp. 2d 452, 456 (E.D.N.Y. 2007) ("A plaintiff need not positively exclude other causes but proof must render them sufficiently 'remote' or 'technical' to enable the jury to reach its verdict based upon logical inferences rather than speculation.") Further, "[p]roximate cause can be inferred from circumstances underlying an accident and need not be demonstrated by direct evidence, but mere speculation as to the cause of injury is insufficient to establish cause." *Estate of Ratcliffe v. Pradera Realty Co.,* No. 05 Civ. 10272 (JFK), 2008 WL 53115, at *3 (S.D.N.Y. Jan. 2, 2008).

Petitioner argues that Giordano admitted in his deposition that he did not know the cause of his accident and, thus, summary judgment is warranted. (*See* Pet.'s Br. at 10 ("Here, because Claimant does not know what caused him to trip, Claimant cannot rule out any other cause, including his physical condition, for a trier of fact to reach a verdict based on logical inference from the evidence, and not speculation.").) However, petitioner has oversimplified Giordano's deposition testimony. Although Giordano was unable to state that he saw or felt his foot hit the spring lines, he clearly testified that he believed, based upon the surrounding circumstances, that the rope caused his accident:

> Q. [After the accident,] When you – when he [the DiMillo employee] asked you what happened, what did you tell him, if anything?
>
> A. I said I don't know what happened. I didn't know.
>
> Q. What caused you to trip?
>
> A. I feel I tripped on one of those ropes.
>
> Q. Did you feel the rope pulling on your leg before you fell?

5

> A. No.
>
> Q. So as you sit here now, is it fair to say you don't know what caused you to fall in the water?
>
> A. I think it was the rope that I tripped on.
>
> Q. You didn't feel the rope tug at your foot before you fell? You didn't feel your foot entangled in the rope before you fell, did you?
>
> A. I don't know. It happened so fast, I don't know.

(Giordano Dep. at 84:10 - 85:6.)

As to the circumstances at the time he fell, Giordano testified that, after placing one foot on the boat, he took a second step and fell into the water. Specifically, Giordano testified that he believed he had tripped over the rope tied to the port stern cleat. (*Id.* 76:10-11; 82:15-16.) Tischer, the DiMillo employee, testified that he had to step across the cross tied spring lines in order to board the boat. (Tischer Dep. 32:5-6.) Giordano also testified that, as a result of Tischer's movement on the boat, the rope may have tightened as he took his second step. (Giordano Dep. 127:10-12.) Giordano further testified that this rope was entangled around his leg when he was in the water.[3] (Giordano Dep. 82:7-8.) In short, given Giordano's deposition testimony (and photographs) regarding the placement of the ropes on the swim platform, Giordano's fall as he stepped onto the platform, and the rope being entangled on his leg when he was in the water, there are disputed material facts that preclude summary judgment on the issue of causation. Although petitioner asserts that the fall and injury may have occurred due to Giordano's gout condition and a limitation of motion resulting from the condition, or some other factor, these issues should be resolved by the trier of fact at trial. Therefore, the Court denies petitioner's motion for summary judgment as to the issue of causation.[4]

---

[3] However, Tischer did not observe Giordano's leg entangled in the lines after the fall. (Tischer Dep. 39:2-3.)

[4] Petitioner, under the belief that Giordano failed to establish that the accident was caused by petitioner's negligence, declined to address the issue of "knowledge or privity." In any event, the Court finds, based upon its review of the record, that there are genuine factual issues for trial as to that element that also preclude summary judgment. In this context, "[t]he term 'knowledge' is used in it everyday meaning, i.e., did Petitioner 'know' of the alleged negligent conditions on his boat. . . ." *In re Livolsi,* 2005 WL 3675967, at *4. In his deposition testimony, Re admits that on the day he dropped the boat off at DiMillo, the crew tied the boat up with spring ropes in a cross pattern. (Re Dep. 28:3-7.) Re further testified that, to the extent he remembers seeing the boat tied up between the time he dropped it off and the accident, the boat was "consistently tied in the same manner from when he dropped it off." (*Id.* 28:15-20; 30:6-8.) Moreover, Giordano points to testimony that, despite seeing this practice, Re did not give any instruction to DiMillo's personnel regarding the

6

### 2. Evidence of Negligence

Petitioner also contends that, even assuming Giordano could prove causation, he cannot prove petitioner was negligent in allowing the tying of the spring lines across the swim platform. (*See* Pet.'s Br. at 9 ("Here, although Claimant alleges Petitioner was negligent in causing or allowing the tying of the spring lines across the swim platform, Claimant cannot prove that this is not an accepted, usual practice for boat handling, and reasonable under the circumstances . . . .").) As discussed below, the Court concludes that this disputed issue cannot be resolved on summary judgment in the instant case.

The standard for determining negligence in this context is whether the shipowner exercised reasonable care under the circumstances. *See Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630 (1959); *see also Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64-65 (2d Cir. 1988) ("Although some older cases called for a higher degree of care aboard ship, it is now clear in this Circuit that the appropriate standard is one of reasonable care under the circumstances.") (citing *Rainey v. Paquet Cruises, Inc.,* 709 F.2d 169, 172 (2d Cir. 1983)). Petitioner argues that there is no evidence that the boat can be tied in any manner other than that utilized by DiMillo's employee, Tischer, on the date of the incident and, thus, Giordano cannot demonstrate negligence on that issue. However, Giordano cites to deposition testimony from Tischer in which he acknowledged that there were several alternative methods available to tie Re's boat to the dock, which would not require the lines to be crossed over the swim platform. (Tischer Dep. at 21-24.) Thus, Giordano has created a triable issue of fact with respect to whether that condition was negligent. *See, e.g., Palmieri v. Celebrity Cruise Lines, Inc.,* No. 98 Civ. 2037 (LAP) (HBP), 1999 WL 494119, at *3 (S.D.N.Y. July 13, 1999) ("While a claim of negligence does not preclude the granting of summary judgement, courts are generally reluctant to grant summary judgment in negligence cases because the assessment of reasonableness is generally a question of fact 'in all but the most extreme situations.'") (quoting *Ortiz v. Rosner,* 817 F. Supp. 348, 350-51 (S.D.N.Y. 1993)). In other words, the issue of whether the decision to tie the lines across the swim platform was reasonable under the circumstances will be decided at trial by the trier of fact.

---

manner in which the boat was tied or the safety of customers climbing onto the boat. (*Id.* 30:15-33:6.) The Court finds that these statements raise a genuine issue of material fact as to whether petitioner had knowledge of a negligent condition in terms of the manner in which his boat was secured to the dock. Similarly, although petitioner argues that DiMillo was not acting as his agent in the sale of petitioner's boat (but rather as an independent contractor) and thus he is not responsible for their alleged negligence in connection with an accident that occurred while petitioner was not present, the above-referenced evidence regarding petitioner's knowledge of how DiMillo was securing the boat raises issues of fact regarding petitioner's knowledge, independent of whether DiMillo was his agent or not. In any event, the agency issue also cannot be resolved in this case on summary judgment based upon the current record because of the fact intensive nature of such inquiry. *See, e.g., Cabrera v. Jakabovitz,* 24 F.3d 372, 386 (2d Cir. 1994) ("Unless the facts are insufficient to support a finding of agency or there is no dispute as to the historical facts, the question of agency should be submitted to the jury so that it may apply the applicable legal standard, as set forth in the instructions, to the facts, as the jury finds them.").

V. Conclusion

For the foregoing reasons, petitioner's motion for summary judgment is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 27, 2008
Central Islip, New York

\* \* \*

The attorneys for petitioner Christoper Re are Patrick J. Corbett & James E. Mercante of Rubin, Fiorella & Friedman LLP, 292 Madison Avenue, 11th Floor, New York, NY 10017. The attorney for respondent-claimant Joseph Giordano is Daniel Komansky, 33 Walt Whitman Road, Suite 215W, Huntington Station, NY 11746. The attorney for respondent DiMillo Yacht Sales and Service, LLC is Christopher C. Vassallo of Huenke & Rodriguez, One Hungtington Quadrangle, Suite 2502, Melville, New York, 11747.